# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

December 22, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:    *William C. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
       Civil No. 21-2768-BAH

Dear Counsel:

On October 28, 2021, Plaintiff William C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case (ECF 12), the parties' cross-motions for summary judgment (ECFs 15 and 18), and Plaintiff's reply (ECF 19). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on August 24, 2016, alleging a disability onset of March 23, 2016. Tr. 611–18. Plaintiff's claims were denied initially and on reconsideration. Tr. 520–25, 528–31. On May 22, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 1152–76. Following the hearing, on July 2, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 913–33. The Appeals Council denied Plaintiff's request for review. Tr. 934–42. Plaintiff filed an action for judicial review of the ALJ's decision in this Court on July 18, 2019. Tr. 943–55.

On June 9, 2020, this Court remanded Plaintiff's case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). Tr. 1000–05; *see William C. v. Saul*, No. TJS-19-2102 (D. Md. June 9, 2020). On February 8, 2021, another ALJ held a hearing. Tr. 889–912. Following the hearing, on June 30, 2021, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI. Tr. 868–88. The ALJ's decision constitutes the final, reviewable decision of the

---

[1] 42 U.S.C. §§ 301 et seq.

*William C. v. Kijakazi*
Civil No. 21-2768-BAH
December 22, 2022
Page 2

SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 23, 2016. Tr. 874. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), obesity, left knee osteoarthritis status-post multiple knee surgeries, bilateral shoulder arthritis, bilateral carpal tunnel syndrome, left cubital tunnel syndrome, right thumb trigger finger, left middle finger trigger finger, status-post left carpal and cubital tunnel release, left middle finger trigger finger release, and degenerative disc disease." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "substance abuse, hyperlipidemia, headaches, and any other medically determinable physical impairment." Tr. 875. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 4041567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, and balance. He can never kneel, crouch, or crawl. He can frequently handle and finger bilaterally. He can perform simple, routine, and repetitive tasks in a setting with no fast-paced production work, such as on an assembly line or that carries strict quotas or deadlines and where the task completion of one affects the task completion of others. Can make simple work-related decisions in a setting with no more than minor changes from day to day (further defined as changes that have little effect on the individual's work tasks or work environment). Occasional interaction with the public, coworkers, and supervisors.

Tr. 879. The ALJ determined that Plaintiff was unable to perform past relevant work as a personal trainer (DOT #153.227-014),[2] building maintenance repairer (DOT #899.381-010), or

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has

*William C. v. Kijakazi*
Civil No. 21-2768-BAH
December 22, 2022
Page 3

construction laborer (DOT #869.687-026), but could perform other jobs that existed in significant numbers in the national economy. Tr. 887–88. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 872.

## III.   LEGAL STANDARD

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.   ANALYSIS

Plaintiff raises one main argument on appeal: that the ALJ's RFC determination in this case was not supported by substantial evidence. ECF 15-1, at 5–19. Specifically, Plaintiff argues that the ALJ "never performed a function-by-function assessment of Plaintiff's ability to perform and sustain material work related activities when determining his RFC," and as such, the decision "does not contain the necessary analysis" of Plaintiff's ability to stand, walk, carry, lift, push, or pull. *Id.* at 13; *see also* ECF 19, at 3. Plaintiff avers that this function-by-function assessment "is material to the ALJ's application of the Medical-Vocational Guidelines [because] if Plaintiff retained the capacity to perform the full demands of sedentary work, a finding of 'Disabled' would be directed . . . ." ECF 15-1, at 18. Plaintiff also argues that the ALJ erred in assessing Plaintiff's RFC by "merely listing Plaintiff's daily activities as substantial evidence that he could maintain a full-time job." *Id.* at 17.

Defendant counters that substantial evidence supports the ALJ's RFC assessment in this case because "the ALJ's decision indicates that she considered and evaluated a variety of relevant evidence when assessing [Plaintiff's] work-related limitations." ECF 18-1, at 6. Defendant further

---

explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

contends that because Plaintiff "makes no explicit argument that the record before the ALJ supported greater functional limitations[,] . . . [Plaintiff] has therefore failed to establish that he was harmed by the error he alleges." *Id.* at 9. Defendant also counters that the ALJ did not improperly rely on Plaintiff's daily activities as substantial evidence that he could maintain a full-time job, but rather, "properly evaluated [Plaintiff's] daily activities as part of her evaluation of his subjective complaints and the limiting effects of his impairments . . . ." *Id.* at 10.

As stated above, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman*, 829 F.2d at 517. In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained her findings and rationale in crediting the evidence. *See, e.g.*, *Sterling*, 131 F.3d at 439–40. Applying that standard, I will uphold the decision of the ALJ.

"'[A] proper RFC analysis' proceeds in the following order: '(1) evidence, (2) logical explanation, and (3) conclusion.'" *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 388 (4th Cir. 2021) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)). "An RFC analysis must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). In *Mascio*, the Court held that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2015) (per curiam)).

Here, unlike in *Mascio* and *Dowling*, the ALJ amply supported her RFC determination with substantial evidence—specifically, evidence which supports her conclusion that Plaintiff retains the capacity to perform the standing and walking functions necessary for light work. The ALJ engaged in a narrative discussion of the medical evidence, Plaintiff's symptoms, hearing testimony, and other evidence spanning approximately eight pages. Tr. 879–87. For example, the ALJ afforded "great weight" to the findings of a 2016 consultative psychological evaluation in which Plaintiff reported "'chasing' his nine-year-old son," shopping, cooking, and cleaning. Tr. 880, 886. The ALJ also afforded "great weight" to evaluations in 2018 and 2020 in which Plaintiff reported "going to his mother's house and removing items," chasing his young sons, and riding a motorcycle. Tr. 881, 886. Further, the ALJ considered evidence that, after undergoing a knee replacement in 2019, Plaintiff "reported feeling, doing, and waling better, with lessening pain," and demonstrated "improved ambulation" approximately two months after his surgery. Tr. 883.

The ALJ also noted that Plaintiff stated during a post-surgery follow-up evaluation that "he was only a little limited in moderate activities such as moving a table, pushing a vacuum cleaner, bowling, or playing golf and climbing several flights of stairs and that pain only moderately interfered with his normal work . . . ." Tr. 883. The ALJ further noted that, during an August 2019 visit to an SSA field office, Plaintiff was noted "to have no difficulty sitting, standing, [or] walking . . . ." Tr. 884. Based upon these findings and the record evidence as a whole, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his]

*William C. v. Kijakazi*
Civil No. 21-2768-BAH
December 22, 2022
Page 5

symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 880. Given the ALJ's detailed assessment of these evaluations and of Plaintiff's activities, I am satisfied that substantial evidence supported the ALJ's RFC assessment with regard to the functional areas of standing and walking. Additionally, because the ALJ relied upon medical opinions as well as Plaintiff's own testimony in formulating the RFC assessment, Plaintiff's argument that the ALJ "merely list[ed] his daily activities," ECF 15-1, at 17, is unavailing.

While the ALJ's narrative discussion amply addresses Plaintiff's ability to stand and walk, the discussion does not similarly address Plaintiff's ability to carry, lift, push, or pull. Plaintiff argues that the ALJ's failure to address these functions, each of which he contends are "relevant to the performance of light work, . . . is a material error that precludes judicial review." ECF 19, at 3. As support for this argument, Plaintiff contends that the ALJ's disability determination was "wholly dependent on the assessment of these functions" because "the primary difference between sedentary and light work concerns the functions of walking or standing." *Id*. at 3–4 (citation omitted). However, as discussed above, the ALJ sufficiently assessed Plaintiff's ability to stand and walk in her narrative discussion of the evidence. In addition, as Defendant correctly notes, Plaintiff "fails to identify any specific evidence in the record that the ALJ failed to consider" with respect to these functions. ECF 18-1, at 6. Plaintiff also does not explain how the ALJ's failure to specifically assess his ability to carry, lift, push, or pull affected the disability determination in this case.[3] Thus, it is unclear how the ALJ's alleged error affected the decision's outcome, if at all.

Accordingly, any failure by the ALJ to perform a function-by-function analysis of Plaintiff's ability to carry, lift, push, or pull, where, as here, there is no evidence that more robust analysis would lead to a different result, constitutes harmless error. *Mascio*, 780 F.3d at 636; *see also Turner v. Colvin*, No. 1:13CV00761, 2015 WL 502082, at *11 (M.D.N.C. Feb. 5, 2015), report and recommendation adopted, No. 1:13CV761, 2015 WL 12564210 (M.D.N.C. Mar. 6, 2015) ("Plaintiff has not made any attempt to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case and, thus, such harmless error does not warrant remand."). Plaintiff has not identified how his conditions limited the RFC to a greater extent than the ALJ found. Thus, I am constrained to find that any alleged error was harmless. *See Brown v. Astrue*, No. JKS–09–1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("Having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, [Plaintiff] has shown no basis for remand.").

My review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v.*

---

[3] It is also important to note that Plaintiff carries the burden of showing how his conditions affected his ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry).

*William C. v. Kijakazi*
Civil No. 21-2768-BAH
December 22, 2022
Page 6

*Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Governed by that standard, I find that the ALJ's decision is supported by substantial evidence and that remand is unwarranted.  Stated differently, after reviewing the ALJ's opinion, I am not "left to guess about how the ALJ arrived at [their] conclusions on [Plaintiff's] ability to perform relevant functions," thus remand is not necessary. *Mascio*, 780 F.3d at 637.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 15, is DENIED and Defendant's motion for summary judgment, ECF 18, is GRANTED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge